**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| TODD CARSON, | : | Civil Action No. 06-5321 (SRC) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| THOMAS SULLIVAN, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

 TODD CARSON, Petitioner <u>Pro Se</u>
 471 Henry Street
 Elizabeth, New Jersey 07201

 SARA BETH LIEBMAN, ESQ.
 Union County Prosecutor's Office
 32 Rahway Avenue
 Elizabeth, New Jersey 07202
 Counsel for Respondents

**CHESLER**, District Judge

 This matter is before the Court on Petitioner Todd Carson's petition for habeas corpus relief under 28 U.S.C. § 2254. For the reasons discussed below, the petition for habeas corpus relief will be denied for lack of merit.

I.   BACKGROUND

A.   Statement of Facts

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its July 13, 2006, unpublished Opinion on petitioner's direct appeal from his conviction:

> Both counts of the indictment arose out of an incident on March 31, 2002, which resulted in the death several days later of I.C., the infant son of defendant.  Count One charged that defendant "did recklessly cause the death of I.C."  Count two charged that
>
> > while having a legal duty for the care of or having assumed responsibility for the care of I.C.  (DOB: 1/30/02), [defendant] did cause harm to I.C., that would make I.C. an abused or neglected child, as defined in N.J.S.A. 9:6-1 and N.J.S.A. 9:6-8.21, to wit: by inflicting upon I.C. physical injury other than by accidental means which caused or created a substantial risk of death.
>
> The State contended that the cause of I.C.'s death was shaken baby syndrome.  It presented several medical experts, together with extensive medical records, which constituted overwhelming proof that shaken baby syndrome was the cause of death.
>
> The evidence revealed that between 7:00 p.m. and 7:46 p.m. on March 31, 2002, defendant was at home alone with I.C. His wife had taken her older son by a prior marriage to a local skating rink, and then stopped at a store to purchase baby items.  Without dispute, during the time defendant was alone with I.C., I.C. became lifeless and stopped breathing. Defendant testified at trial.  He said that I.C. was cranky and irritated and was crying.  He said I.C. had been out of sorts since the previous day.  Defendant contended that he and his wife had trouble feeding I.C. on March 31.  He said that he picked up I.C. and held him, rubbing his back in a

2

circular motion, as he had seen his wife do on prior occasions, in an effort to console him.  He said that I.C. burped and immediately went limp and lifeless.

Defendant said he became scared.  He did not know how to perform CPR.  He attempted to call his wife on her cell phone, but, unbeknownst to him, her cell phone service had been cancelled two days earlier.  Immediately after the unsuccessful call to his wife, defendant said he heard the car pulling up the driveway, and looking out the window, saw that his wife was returning home.  He banged on the window, gaining her attention and informing her that something was wrong with the baby.  She ran into the apartment and attempted unsuccessfully to perform CPR, after which she called 911.  Defendant denied shaking the baby.

Defendant and his wife testified that about a week or two earlier, defendant's wife was up with I.C. in the middle of the night because he was crying.  She woke up defendant to inform him that I.C. had burped and she believed he stopped breathing temporarily.  Defendant contended he wanted to take the baby to the hospital, but his wife did not think it necessary.  Neither of them called 911.  On that occasion, defendant observed his wife rubbing I.C.'s back in a circular motion.

Defendant presented a medical expert who opined that I.C.'s death was a result of an adverse reaction to a Hepatitis B vaccine that he had received on March 4, 2002.  Part of the defense theory was that I.C. was a fragile child, born with a temperature because his mother had an infection at the time of birth, that he had a low birth weight and was slow in gaining weight, and that he was born with some retinal hemorrhaging.  The State's medical experts strongly refuted the medical theories advanced by the defense.

During the course of the trial, some testimony was elicited regarding defendant's failure to call 911, and in her summation, the prosecutor said this:

> We played the 9 1 1 tape for you and will have it in
> the jury room and you can listen to it again.  And in
> addition, you will have the transcript and you can
> either see from following along on the transcript or
> listening to the tape again you will see how [G.C.]
> found her baby that was in the sole custody of
> defendant's care.  You will hear her voice on the tape.
> The first thing she says is my baby's not breathing.
> The next thing she says is he's so lifeless.  He's so

lifeless.  He's so lifeless.  My God, he's so lifeless.
And you heard the defendant's own words that his son
was limp and lifeless.  And so what does the defendant
do?  Does he call 9 1 1?

Ladies and gentlemen, I would ask you again to rely on
your human experiences.  When someone does something
wrong it is human nature that you do one of two things.
You either blame somebody else or you say it was an
accident.  So I would ask you to take into
consideration the fact that this defendant does not
call 9 1 1.

His stepson testified in front of you that not only
does he know at 18 that when there's an emergency you
cal 9 1 1 and he's known that for a very long period of
time, but in fact he's discussed this with both his
mother and his stepfather that if something's wrong and
there's an emergency you call 9 1 1.

But the defendant didn't do that in this case.  Instead
he called his wife's cell phone.  And he would have you
believe, despite the fact that she testified that her
cell phone was disconnected, that he didn't realize her
cell phone was disconnected.  But even so when he
doesn't get a response, what does he do with this poor
limp and lifeless two month old baby?  He waits for her
to arrive home and then she calls 9 1 1.

(Ra17, July 13, 2006 Appellate Division Opinion on direct appeal,

at pages 3-7).[1]

---

[1]  The relevant state court record submitted by respondents'
counsel is designated by reference to the Respondents' Exhibits
("R"), as follows:

| | |
|---|---|
| Ra1 | Transcript of trial proceedings, April 21, 2004 (Vol. I) |
| Ra2 | Transcript of trial proceedings, April 21, 2004 (Vol. II) |
| Ra3 | Transcript of trial proceedings, April 22, 2004 (Vol. I) |
| Ra4 | Transcript of trial proceedings, April 22, 2004 (Vol. II) |
| Ra5 | Transcript of trial proceedings, April 26, 2004 |
| Ra6 | Transcript of trial proceedings, April 27, 2004 |
| Ra7 | Transcript of trial proceedings, April 28, 2004 (Vol. I) |
| Ra8 | Transcript of trial proceedings, April 28, 2004 (Vol. II) |

B.  <u>Procedural History</u>

Petitioner, Todd Carson ("Carson"), was indicted by a Union County Grand Jury on March 18, 2003, on the following charges: (Count One) second degree manslaughter, contrary to <u>N.J.S.A.</u> 2C:11-4b(1); and (Count Two) second degree endangering the welfare of a child, contrary to <u>N.J.S.A.</u> 9:6-1; <u>N.J.S.A.</u> 9:6-8.21 and <u>N.J.S.A.</u> 2C:24-4a.

Carson was tried before the Honorable Stuart Peim, J.S.C. and a jury in April 2004.  On April 30, 2004, the jury returned a verdict, finding Carson not guilty on the manslaughter charge and guilty on the second count of endangering the welfare of a child. (Ra11, 23:14-23).  On June 4, 2004, Judge Peim sentenced Carson to a nine-year prison term.

---

| Ra9 | Transcript of trial proceedings, April 29, 2004 (Vol. I) |
| Ra10 | Transcript of trial proceedings, April 29, 2004 (Vol. II) |
| Ra11 | Transcript of trial proceedings, April 30, 2004 |
| Ra12 | Transcript of Sentencing of June 4, 2004 |
| Ra13 | Judgment of Conviction, dated June 4, 2004 |
| Ra14 | Petitioner's brief on direct appeal |
| Ra15 | State's brief on direct appeal, dated December 6, 2005 |
| Ra16 | Petitioner's reply brief on direct appeal, dated January 12, 2006 |
| Ra17 | Appellate Division Opinion affirming petitioner's conviction, dated July 13, 2006 |
| Ra18 | Petitioner's notice to file petition for certification, July 31, 2006 |
| Ra19 | Petitioner's petition for certification and appendix, dated August 10, 2006 |
| Ra20 | State's answer to petition for certification, dated August 23, 2006 |
| Ra21 | New Jersey Supreme Court Order denying certification, dated October 5, 2006 |

Carson filed a notice of appeal on or about August 13, 2004. The Superior Court of New Jersey, Appellate Division affirmed the conviction, but remanded the matter for reconsideration of the sentence.[2]  Carson then filed a petition for certification with the Supreme Court of New Jersey.  The Supreme Court of New Jersey denied certification on October 5, 2006.

Carson submitted this petition for habeas relief under 28 U.S.C. § 2254, on or about October 28, 2006.[3]  Respondents answered the petition on February 1, 2007, and provided this Court with a copy of the relevant state court record for habeas

_____

[2]  The Appellate Division held that a remand was required under State v. Natale, 184 N.J. 458 (2005), because "in imposing an above-presumptive sentence, the judge relied upon aggravating factors which did not involve a prior criminal record of defendant."  (Ra17 at page 3).

[3]  Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1998) (applying prison mailbox rule set forth in Houston, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition).  Although the Court is unable to determine from the face of the petition the exact date that Carson handed his petition to prison officials for mailing, Carson signed the petition on October 28, 2006.  See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1998) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition).  Accordingly, the Court finds that October 28, 2006, rather than November 6, 2006 (the date the petition was received in the Clerk's office), was the date this petition was filed for purposes of calculating the timeliness of the petition.

It appears from the record that Carson timely filed his habeas petition.  The State does not contend that the petition is time-barred.

review.  Carson filed a reply brief to the State's answer on
February 23, 2007.

## II.  <u>STATEMENT OF CLAIMS</u>

In his habeas petition, Carson raises the following grounds
for habeas relief:

Ground One:  The trial court failed to properly instruct the
jury on a theory of liability for child endangerment, rendering
the statute unconstitutionally vague in its application.

Ground Two:  Petitioner's right to due process was violated
when the State failed to advise Petitioner of his specific
conduct that purportedly violated the child endangerment statute.

Ground Three:  Conviction should be reversed because the
verdict was inconsistent.

The State answered the petition, arguing that petitioner's
claims are without merit or do not state a cognizable federal
claim involving a federal constitutional violation.  There is no
assertion that petitioner's claims are unexhausted, and this
Court finds that the claims raised by Carson in this federal
habeas action were fairly presented on state court review.

## III.  <u>STANDARD OF REVIEW</u>

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429
U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).
A pro se habeas petition and any supporting submissions must be
construed liberally and with a measure of tolerance.  See <u>Royce</u>

v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney
General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.
Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399
U.S. 912 (1970).  Because petitioner is a pro se litigant, the
Court will accord his petition the liberal construction intended
for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas
matters must give considerable deference to determinations of the
state trial and appellate courts.  See 28 U.S.C. § 2254(e);
Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122
S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.
1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section
2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
> (1)  resulted in a decision that was contrary to, or
>       involved an unreasonable application of, clearly
>       established Federal law, as determined by the
>       Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an
>       unreasonable determination of the facts in light
>       of the evidence presented in the State court
>       proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or
conditions, one of which must be satisfied before a writ may

issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id</u>.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  <u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify

the applicable Supreme Court precedent and determine whether it resolves petitioner's claims. <u>See</u> <u>Werts</u>, 228 F.3d at 196-97; <u>Matteo</u>, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  <u>Id</u>.  AEDPA prohibits such <i>de novo</i> review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  <u>Id</u>.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  <u>Id</u>.; <u>see also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  <u>Chadwick v. Janecka</u>, 312 F.3d 597, 605-06 (3d Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 1000 (2003)(<u>citing</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-

AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.  ANALYSIS

The Court will examine each of petitioner's claims on the merits, pursuant to the standard of review as recited above.

A.  Inadequate Jury Instructions

In his first claim for habeas relief, Carson asserts that the trial court improperly instructed the jury on two alternative theories of liability, (a) that Carson shook his child to death, and (b) Carson's failure to call 911 contributed to the infant's death.  Carson states that his medical expert refuted the "shaken

baby" syndrome and that he was acquitted of the reckless manslaughter charge.  (Petition, Ground 12A).  In his reply to the State's answer, Carson further argues that the trial court failed to properly instruct the jury on the "actual conduct" petitioner allegedly committed, allowing the jury to "'guess' at what actual conduct [petitioner] did."  (Pet. Reply Brief at Point 1, page 1 (Docket Entry No. 13)).

The State contends that there was only one theory of liability advanced at trial, and that the New Jersey Appellate Division so held on direct review.  Moreover, the jury instructions were proper, and no constitutional error occurred. Petitioner did not object to the jury instructions at trial, and to the extent that any error did occur, it amounts to harmless error.

On direct review, the New Jersey Appellate Division held:

On appeal, all of the arguments raised by defendant rely on the premise that the prosecutor presented two alternate and distinct theories of culpability on count two: (1) defendant endangered the welfare of I.C. by shaking him and causing his death, or (2) upon I.C. becoming limp and lifeless, defendant endangered his welfare by failing to call for medical assistance.  In support of this argument, which was never raised in the trial court, defendant directs our attention to testimony that was elicited regarding defendant's failure to call 9 1 1, the prosecutor's summation comments, and the judge's failure to include in his instructions on count two the positions of each party.

When instructing the jury on count one, after explaining the elements of reckless manslaughter, the judge gave this synopsis of each party's position:

> The State argues that [I.C.]'s death was caused by the
> baby shaking syndrome.  On the other hand, the defense
> argues that [I.C.]'s death was not caused by the Shaken
> Baby Syndrome but rather was caused by an adverse
> reaction to the hepatitis B vaccine as further
> described by Dr. Buttram.

The judge then instructed the jury on count two.  The judge
followed the model jury charge, and defendant acknowledges
that the charge was legally correct.  The judge explained
that for defendant to be guilty, the State was required to
prove beyond a reasonable doubt that I.C. was a child, that
defendant knowingly caused I.C. harm that would make him an
abused or neglected child, that defendant knew that such
conduct would cause such harm, and that defendant had a
legal duty to or assumed responsibility for the care of the
child.  The judge defined an "abused or neglected child" to
be one "whose parent or guardian inflicts upon such child
physical injury by other than accidental means which causes
or creates a substantial risk of death."  While charging the
jury on count two, the judge did not repeat the positions of
the parties as set forth at the end of his charge on count
one, nor did he otherwise set forth the positions of the
parties.

. . .

Because there was no alternate theory, there was no basis
for juror confusion, and the general unanimity charge given
was adequate.  See State v. T.C., 347 N.J. Super. 219, 243-
44 (App. Div. 2002), certif. denied, 177 N.J. 222 (2003).
Likewise, defendant was not deprived of due process by
failure of the State to inform him of an alternate theory,
because there was no alternate theory.

The jury instruction on count two was not deficient for
failure to repeat the contentions of both parties.  It was
obvious from the arguments of counsel, the overwhelming
evidence presented in the case, and the overall jury charge
on the two counts, that the theory of culpability advanced
by the State on both counts was that defendant shook I.C.,
causing his death.

(Ra17, July 13, 2006 Appellate Division Opinion on direct appeal,

at pages 7-8, 11).

Generally, a jury instruction that is inconsistent with
state law does not merit federal habeas relief.  Where a federal
habeas petitioner challenges jury instructions given in a state
criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations
omitted).  Thus, the Due Process Clause is violated only where
"the erroneous instructions have operated to lift the burden of
proof on an essential element of an offense as defined by state
law."  Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997), cert.
denied, 522 U.S. 1109 (1998).  See also In re Winship, 397 U.S.
358, 364 (1970) ("the Due Process Clause protects the accused
against conviction except upon proof beyond a reasonable doubt of
every fact necessary to constitute the crime with which he is
charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury
instructions that suggest a jury may convict without proving each

element of a crime beyond a reasonable doubt violate the
constitutional rights of the accused).

Where such a constitutional error has occurred, it is
subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at
416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f
the [federal habeas] court concludes from the record that the
error had a 'substantial and injurious effect or influence' on
the verdict, or if it is in 'grave doubt' whether that is so, the
error cannot be deemed harmless."  Id. at 418 (citing California
v. Roy, 519 U.S. 2, 5 (1996)).  See also Fry v. Pliler, __ U.S.
__, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007)(Supreme Court held that
"in § 2254 proceedings a court must assess the prejudicial impact
of constitutional error in a state-court criminal trial under the
"substantial and injurious effect" standard set forth in Brecht
[v. Abramson], 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353
[(1993)], whether or not the state appellate court recognized the
error ...").  In evaluating a challenged jury instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal
quotations and citations omitted).

Here, the Appellate Division evaluated the entire trial record and overall jury charge and found no reversible error. Specifically, the Appellate Division found that the State's theory of culpability was based solely on the Shaken Baby Syndrome, and that the jury charges did not have the capacity to produce an unjust result.  Moreover, the Appellate Division noted the overwhelming evidence in the case to support the State's theory of culpability as to the Shaken Baby Syndrome.

The Appellate Division also found that the trial judge's jury charge on count two was not deficient for failure to repeat the contentions of both parties.  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  In this case, the Appellate Division determined that the theory of culpability was "obvious from the arguments of counsel" and reiterated that the evidence presented against Carson and on the Shaken Baby Syndrome was overwhelming.  Consequently, the trial court's omission of language in the jury charge on count two concerning the positions of the parties was plainly harmless.

Thus, after carefully reviewing the trial transcripts, and the jury instructions as a whole, this Court finds no error of constitutional dimension in the jury charges as alleged by Carson.  To the extent the omitted language in the jury charge on count two was error, this Court finds such error was plainly

harmless in light of the overall record.  Indeed, as determined
by the Appellate Division, the evidence of Carson's guilt was
"overwhelming."  Therefore, the child endangerment statute was
not unconstitutionally vague as applied to Carson, and no due
process violation occurred.  Moreover, this Court finds that the
thorough decision of the Appellate Division regarding the jury
instructions is neither contrary to, nor an unreasonable
application of, the applicable federal law; nor is the court's
decision based upon an unreasonable determination of fact.
Accordingly, Carson is not entitled to relief on this claim.

B.  No Due Process Violation

     Next, in a related claim to Ground One,[4] Carson asserts that
the State failed to explain and prove the "actual conduct" by
petitioner that purportedly violated the child endangerment
statute.  Carson argues that he was never told how he violated
the child endangerment statute, and consequently, his right to
due process was violated.[5]  (Petition, Ground Two, 12B).

_____

     [4]  These claims are related to the extent that Carson
appears to be arguing that the child endangering charge was based
on an alternate theory of culpability, which the State failed to
inform petitioner as to the actual conduct forming the basis of
said charge.  Carson essentially complains that he was denied due
process because the State failed to inform him of its alleged
alternate theory of liability, and accordingly, the child
endangerment statute was unconstitutionally vague as applied to
petitioner.

     [5]  Carson also contends that his acquittal on the reckless
manslaughter count, which was based on the Shaken Baby Syndrome,
would invalidate his conviction on the child endangerment charge
based on double jeopardy.  (Petition, Ground Two, 12B).  The

The Appellate Division found absolutely no merit to this claim presented by Carson on direct appeal.  In particular, the Appellate Division found:

> A review of the trial record makes clear that this case was all about whether the State proved that I.C.'s death was caused by shaken baby syndrome.  In their summations, both counsel devoted their arguments to that subject.  The prosecutor's comment during summation about defendant's failure to call 9-1-1 did not inject a separate theory of culpability into the case.  In context, the comments were intended to discredit defendant's version of the events and to raise an inference that his failure to call 9-1-1 was an effort to avoid responsibility for his conduct in shaking the baby and causing his extreme medical distress.  It was an effort to persuade the jury that if defendant's version were true, and if he were innocently holding the baby when the baby suddenly stopped breathing and went limp, defendant would have nothing to hide and, as would be the normal response of anyone, would immediately call 9-1-1 for medical assistance.  The comments did not inject a new theory of culpability.

> We note that the child endangering statute, N.J.S.A. 2C:24-4a, incorporates by reference various forms of "harm" as defined in Title 9.  See State v. Demarest, 252 N.J. Super. 323 (App. Div. 1991).  The grand jury indicted defendant for causing a discreet form of harm as set forth in N.J.S.A. 9:6-8.2c(1).  The grand jury did not indict defendant for causing any other forms of harm to I.C.  N.J.S.A. 9:6-8.21(c) includes other definitions of an "abused or neglected child," such as "a child whose physical ... condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent ... to exercise a minimum degree of care ... in supplying the child with adequate ... medical ... care... ."  N.J.S.A. 9:6-8.21c(4).  "Neglect" of a child, may consist of "willfully failing to provide proper and sufficient ... medical attendance or surgical treatment."  N.J.S.A. 9:6-1.

---

double jeopardy prohibition is designed to protect a defendant from being twice tried or punished for the same offense.  See Schiro v. Farley, 510 U.S. 222 (1994); United States v. Rivera, 384 F.3d 49 (3d Cir. 2004); see also U.S. Const. Amend. V. Carson was tried only once and punished for only one offense. The double jeopardy doctrine is simply not implicated here.

> This provision is also incorporated by reference in N.J.S.A. 2C:24-4a. See State v. Bass, 221 N.J. Super. 466, 492 (App. Div. 1987), certif. denied, 110 N.J. 186 (1988). Neither of these theories were incorporated in the indictment. They would have been utilized had the State sought to establish culpability by failure to call 9-1-1. But this was never part of the State's theory.
>
> Because there was no alternate theory, there was no basis for juror confusion, and the general unanimity charge given was adequate. See State v. T.C., 347 N.J. Super. 219, 243-44 (App. Div. 2002), certif. denied, 177 N.J. 222 (2003). Likewise, defendant was not deprived of due process by failure of the State to inform him of an alternate theory, because there was no alternate theory.

(Ra17, July 13, 2006 Appellate Division Opinion on direct appeal, at pages 9-11).

This Court finds that the factual determination of the New Jersey Appellate Division regarding the absence of an alternate theory of culpability, and that petitioner was fully informed as to the basis of the charges against him, was reasonable and amply supported by the evidence presented at trial. A thorough review of the trial transcripts confirms that the State proffered no alternate theory of liability on the child endangering statute. The State clearly argued throughout the trial that I.C.'s death was caused by Shaken Baby Syndrome. Reference to Carson's failure to call 9-1-1 was made mainly to discredit petitioner's version of the events (*i.e.,* that the baby suddenly went limp while Carson was gently pacifying him). It was not a new or different theory of liability.

Moreover, the indictment as to Count Two plainly states that Carson "did cause harm to I.C., ... by inflicting upon I.C. physical injury other than by accidental means which caused or created a substantial risk of death," while having a legal duty for the care of, or having assumed responsibility for the care of I.C.  (Indictment No. 03-03-00231, as attached to Ra 14, Petitioner's Brief and Appendix on direct appeal).  The State presented no other evidence of physical harm to I.C. other than medical expert testimony as to Shaken Baby Syndrome. Consequently, petitioner cannot argue now that he was not informed of the factual basis of this second charge against him. The trial record shows that no other theory of liability was advanced.  Further, the State's evidence of Shaken Baby Syndrome factually supported the charge that Carson did cause harm to I.C. by shaking him in violation of the child endangerment statute. The statute was not unconstitutionally vague as applied to petitioner in this instance.

Finally, this Court finds that Carson has not demonstrated that the decision of the Appellate Division was contrary to, or an unreasonable application of any governing Supreme Court precedent.  Therefore, Ground Two of the petition will be denied for lack of merit.

C.  <u>Inconsistent Verdict</u>

In his last ground for relief, Carson argues that the inconsistent or "fragmented" verdict compels reversal of his conviction on the child endangering offense.  Carson contends that his acquittal on the reckless manslaughter charge obligated the trial judge to ensure a unanimous verdict on the second count because the jury essentially determined that Carson did not shake his baby.

Again, the New Jersey Appellate Division rejected this claim on direct review.  The court held:

> Finally, there is no basis upon which to conclude that the verdict might have been fragmented, with some jurors finding defendant guilty on one theory and others finding him guilty on a completely unrelated and contradictory theory.  There was no allegation, no evidence, and no argument upon which jurors would have found culpability on any theory other than defendant's affirmative act of shaking the baby.
>
> Although the verdicts on the two counts appear inconsistent, any such inconsistency in these circumstances should not result in a windfall to defendant.  "[W]e should not speculate as to whether the verdicts resulted from jury lenity, compromise, or mistake not adversely affecting the defendant."  State v. Grey, 147 N.J. 4, 11 (1996).  The verdict on count two is more than amply supported by the evidence.  There was no trial error and no prosecutorial impropriety that caused the acquittal on count one and conviction on count two.

(Ra17, July 13, 2006 Appellate Division Opinion on direct appeal, at pages 11-12).

Inconsistent verdict claims are not cognizable on federal habeas review in the absence of conviction of two offenses that are mutually exclusive.  United States v. Powell, 469 U.S. 57, 69 n.8 (1984); Buehl v. Vaughn, 166 F.3d 163, 178-79 (3d Cir.),

cert. dismissed, 527 U.S. 1050 (1999); Laird v. Horn, 159
F.Supp.2d 58 (E.D.Pa. 2001), aff'd and remanded, 414 F.3d 419 (3d
Cir. 2005), cert. denied, 546 U.S. 1146 (2006).  The Supreme
Court has long held that "[c]onsistency in the verdict is not
necessary."  Dunn v. United States, 284 U.S. 390, 393 (1932);
Powell, 469 U.S. at 62.  The Third Circuit likewise ruled that
"[w]here different offenses are charged in separate counts of a
single indictment, an acquittal on one or more of the counts does
not invalidate a verdict of guilty on another even where the same
evidence is offered in support of each count."  United States v.
Vastine, 363 F.2d 853, 854 (3d Cir. 1966)(*citing* Dunn, 284 U.S.
at 390).  Dunn explains that "the verdict shows that either in
the acquittal or the conviction the jury did not speak their real
conclusions, but that does not show that they were not convinced
of the defendant's guilt.  We interpret the acquittal as no more
than their assumption of a power which they had no right to
exercise, but to which they were disposed through lenity."  Dunn,
284 U.S. at 393.  See also Powell, 469 U.S. at 65
("[i]nconsistent verdicts - even verdicts that acquit on a
predicate offense while convicting on the compound offense -
should not necessarily be interpreted as a windfall to the
Government at the defendant's expense.  It is equally possible
that the jury, convinced of guilt, properly reached its
conclusion on the compound offense, and then through mistake,

compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense").

As discussed above, the New Jersey Appellate Division concluded that the verdict on the child endangering offense was "more than amply supported by the evidence."  Therefore, the verdicts were not necessarily inconsistent.  In light of the state court's factual determination that there was "overwhelming" evidence to support the State's theory of Shaken Baby Syndrome, which was clearly an element of the child endangering offense (*i.e.,* the State was required to show that petitioner did cause harm to I.C., while he was under petitioner's care, by inflicting upon I.C. physical injury other than by accidental means which caused or created a substantial risk of death), and given the established federal law regarding inconsistent verdicts, this Court finds no constitutional basis to disturb the state court conviction.  Carson has not shown a deprivation of constitutional right, an unreasonable application of federal law by the state court, or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, as required to grant habeas relief pursuant to 28 U.S.C. § 2254(d). Accordingly, the petition for a writ of habeas corpus will be denied on this ground.

## V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VI.  CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.   An appropriate Order follows.


    S/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: August 23, 2007

24